FILED
Aug 01, 2023
02:39 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Robert Bragg ) | Docket No.     2020-07-0020 |
| ) | |
| v. ) | State File No.  10723-2018 |
| ) | |
| Premium Services, LLC, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | Heard June 26, 2023 |
| Compensation Claims ) | via Microsoft Teams |
| Allen Phillips, Judge ) | |

---

**Affirmed and Certified as Final**

---

In this appeal, the employer asserts the trial court erred by failing to address in its compensation order the employer's potential entitlement to an offset against permanent partial disability payments arising from the employee's anticipated future social security benefits. The employee was not receiving social security benefits at the time of maximum medical improvement or as of the date of trial. In addition, the employee asserts the trial court erred by limiting the employer's liability for unpaid medical expenses to the amounts mandated by Tennessee's medical fee schedule and by not awarding attorneys' fees on the amount of unpaid medical expenses to be paid by the employer. After careful consideration, we conclude the issue of a potential social security offset is not ripe for adjudication, and we affirm the trial court's order in all other respects and certify it as final.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Neil M. McIntire, Nashville, Tennessee, for the employer-appellant, Premium Services, LLC

Jeffrey P. Boyd, Jackson, Tennessee, for the employee-appellee, Robert Bragg

### Factual and Procedural Background

The underlying facts of this case are largely undisputed for purposes of this appeal. On January 11, 2018, Robert Bragg ("Employee") was injured while "using a vice [sic] to manually bend 3/4 [inch] steel into customer specifications" in the course

1

and scope of his employment with Premium Services, LLC ("Employer"). He complained of pain in his right elbow, right arm, and right shoulder and reported the incident to Employer. Employee received medical treatment for his right elbow with his authorized physician, Dr. Nicholas Vance, who performed a lateral epicondylitis release. He also received medical treatment for his right shoulder, including surgery, with his authorized physician, Dr. Adam Smith. Following his shoulder surgery, Employee began to complain of neck pain, and Dr. Smith recommended diagnostic testing, which Employer authorized to determine whether Employee's cervical complaints were causally related to his 2018 work incident. Upon review of Employee's diagnostic studies, Dr. Smith determined he could not conclude that Employee's cervical symptoms were directly related to the January 2018 incident. He placed Employee at maximum medical improvement on October 15, 2019, assigned a 2% impairment rating to the whole body, and stated, "I do not believe I can directly attribute his arm and numbness and tingling and his cervical degenerative change to his elbow or his shoulder based on our findings." Subsequently, Dr. Smith referred Employee to a pain specialist "outside of Worker's Compensation."

In December 2019, Dr. Smith responded to an inquiry from Employee's counsel in which he opined that Employee's cervical symptoms *were* related to his January 2018 work incident. Employee filed a petition for benefit determination on January 9, 2020, requesting medical treatment for his neck. Employer provided a panel from which Employee selected neurosurgeon Dr. Fereidoon Parsioon. Prior to his appointment with Dr. Parsioon, Employee chose to see orthopedic surgeon Dr. Patrick Curlee on his own. In his records, Dr. Curlee noted that he was seeing Employee based on a referral from Dr. Smith and documented a "two-year history" of neck and arm pain with some numbness and tingling in his arms and hands. Based upon his review of the cervical MRI, Dr. Curlee diagnosed Employee with severe degenerative disc disease. He recommended a cervical spine fusion at three levels and opined that Employee's work injury had aggravated or exacerbated his cervical pathology, resulting in the need for surgery. In June 2020, Employee saw Dr. Parsioon, who agreed that Employee had degenerative disc disease but did not agree that the condition or the need for surgery were work related. Dr. Parsioon offered to perform the surgery under Employee's personal insurance, and Employer denied Employee's neck claim based on Dr. Parsioon's opinion. Eventually, Dr. Curlee performed the cervical spine surgery under Employee's private insurance.

At the March 2, 2023 trial, all four doctors' depositions were entered into evidence, and Employee testified live. On March 14, the trial court issued an order finding by a preponderance of the evidence that Employee injured his neck while turning the vise at work. In doing so, the court attached greater weight to Dr. Curlee's opinions.[1]

---

[1] Employer argued that Dr. Parsioon's opinion should be presumed correct because he was chosen from a panel. The trial court determined that even if Dr. Parsioon had been entitled to a presumption of correctness, Dr. Curlee's opinion was sufficient to rebut any presumption that would have attached.

Thus, the court determined that Employee had sustained a twenty-three percent permanent partial disability and applied enhancement factors of 1.35 for Employee's not having returned to work, 1.2 for his being over the age of 40, and 1.45 for his lacking a high school diploma or its equivalent. Based on a compensation rate of $419.19 per week, Employee's award of permanent partial disability benefits totaled $101,914.09.

The parties agreed that Employee reached maximum medical improvement on January 21, 2021, and that the accrued benefits from that date to March 2, 2023, the date of trial, were payable in a lump sum. The court noted that Employee's counsel was entitled to a fee of twenty percent of the recovery, payable in lump sum, and that the remainder of Employee's permanent partial disability award was payable to Employee in periodic payments until paid in full. The trial court also ordered Employer to "pay the medical bills for treatment of [Employee's] neck injury pursuant to the fee schedule." It further noted that, pursuant to Tennessee Code Annotated section 50-6-226(a)(1), Employee's attorneys' fees are to be paid by Employee as a percentage of his recovery, as he was the party who employed the attorney. The court concluded that Employee was entitled to reasonable and necessary future medical treatment for his elbow, shoulder, and neck under Tennessee Code Annotated section 50-6-204(a)(1)(A) and designated Dr. Vance as the treating physician for the elbow, Dr. Smith for the shoulder, and Dr. Curlee for the neck.

On March 16, Employee filed a Rule 59 Motion to Alter or Amend the Judgment or in the Alternative Rule 60.04 Motion to Clarify Clerical Mistake. In its motion, Employee requested that the court clarify the procedure by which it had ordered the reimbursement of the medical expenses already paid by BlueCross/BlueShield ("BCBS") and attorneys' fees to be paid based on those medical expenses. On April 18, the trial court issued an order denying Employee's motion to alter or amend, referencing its March 14 order instructing Employer to pay the disputed medical bills pursuant to the applicable fee schedule. In doing so, the court noted that Tennessee Code Annotated section 50-6-204(a)(3)(A)(iii) provides that "[t]he liability of the employer for the services provided to the employee shall be limited to the maximum allowable fees" under the fee schedule. The court also relied on Tenn. Comp. R. and Regs. 0800-02-18-.15(1), which states that "providers shall not accept[,] and employers shall not pay" any bill for medical services that exceed the maximum allowable payment under the fee schedule. As such, the court reiterated the terms of its March 14 order: Employer was to pay the disputed medical bills to the providers pursuant to the fee schedule, and Employee's attorney was entitled to an attorney's fee, paid by Employee, not to exceed 20% of the total recovery, including the amount attributable to the unpaid medical expenses. Both Employee and Employer appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

Employer identifies three issues in its notice of appeal, which we restate as follows: (1) whether Employee established medical causation of the cervical spine condition by a preponderance of the evidence; (2) whether Employer is entitled to an offset or credit for a portion of Employee's social security retirement benefits he may receive in the future against future payments of permanent partial disability benefits; and (3) whether Employee's attorney is entitled to a fee related to the court's award of medical benefits and, if so, who is responsible for payment of the fees and in what amount. The issues raised by Employee on appeal are whether the trial court erred in finding that Employer is only responsible for paying disputed medical expenses pursuant to the medical fee schedule and whether counsel for Employee is entitled to an attorneys' fee associated with his asserted protection of BCBS's subrogation interest in those medical bills to be paid by the Employer.

With respect to Employer's first issue, we note that Employer did not address the issue of medical causation in its brief on appeal or during oral argument. Accordingly, we treat that issue as having been waived. *See Moore & Seiferth v. Ingles Markets, Inc.*, No. 2015-02-0193, 2015 TN Wrk. Comp. App. Bd. LEXIS 54, at *4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

4

*Social Security Offset*

Employer asserts it is entitled to an offset or credit against future periodic payments of Employee's permanent partial disability benefits beginning March 22, 2023, equal to fifty percent of Employee's old age social security benefits. *See, e.g.*, *McCoy v. T.T.C., Illinois, Inc.*, 14 S.W.3d 734, 738 (Tenn. 2000). It is requesting modification of the trial court's order or, alternatively, that we remand the matter to the trial court with instructions that the court include language addressing Employer's entitlement to the offset in its order. As an initial matter, we note that we were not provided with a transcript of the compensation hearing, and, thus, we cannot know the extent and substance of the discussion or any testimony regarding this issue. Further, when questioned during oral argument as to whether the issue of an offset was raised at trial, counsel for Employer stated there was "general discussion," but he could not recall "if the offset was specifically addressed in terms of whether there was a dispute about it." Employer also acknowledged it did not obtain evidence regarding the amount of Employee's anticipated monthly social security benefit because Employee was not eligible for those benefits until March 22, 2023. It further noted that the trial court had not yet made a determination as to compensability of the claim at the time of trial. Conversely, counsel for Employee argued that, to the best of his recollection, the issue was not raised at trial "because [Employee] was not eligible for social security benefits at that time." Further, Employee claimed that even if the matter had been raised, the trial court would have been unable to calculate the offset at the time of the hearing.

Tennessee Code Annotated section 50-6-207(4)(A)(i), the relevant statute concerning the social security offset, provides:

> For permanent total disability as defined in subdivision (4)(B), [the employee is entitled to] sixty-six and two-thirds percent (66 ⅔%) of the wages received at the time of the injury, subject to the maximum weekly benefit and minimum weekly benefit . . . . This compensation shall be paid during the period of the permanent total disability until the employee is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act . . .; provided, that with respect to disabilities resulting from injuries that occur less than five (5) years before the date when the employee is eligible for full benefits in the Old Age Insurance Benefit Program as referenced previously . . . or after the employee is eligible for such benefits, permanent total disability benefits are payable for a period of two hundred sixty (260) weeks. *The compensation payments shall be reduced by the amount of any old age insurance benefit payments attributable to employer contributions . . . .*

(Emphasis added.) Employer relies on *McCoy* in support of its contention that the social security offset language applies to all injuries to the body as a whole, even if the

5

permanent disability is not total.  Employer further contends the trial court erred by omitting the statutory offset language in its compensation order and by failing to instruct Employer to "pay those 105.96 [weeks of] periodic payments for permanent partial disability benefits subject to the offset provided for in [Tennessee Code Annotated section] 50-6-207(4)(A)(i)."  In *McCoy*, the Tennessee Supreme Court held that the social security offset contained in Tennessee Code Annotated section 50-6-207(4)(A)(i) applies to workers over the age of sixty who suffer injuries to the body as a whole regardless of whether the injury rendered the injured worker totally or partially disabled.  *Id.* at *13.

Employer also referenced *Cummings v. Express Courier International, Inc.*, No. E2020-00548-SC-R3-WC, 2021 Tenn. LEXIS 55 (Tenn. Workers' Comp. Panel Feb. 17, 2021), noting that the employee in that case was 62 years old when she reached maximum medical improvement but was 69 at the time of trial.  In *Cummings*, the trial court found the employee permanently and totally disabled and concluded the employer was entitled to an offset.  *Id.* at *7.  On appeal, the result was affirmed by the Tennessee Supreme Court.  *Id.*  Employer argues that binding precedent and the unambiguous language of the statute clearly establish that Employer is entitled to an offset and that it should be applied regardless of whether the issue was raised at trial because it is simply a mathematical calculation to be performed when the trial court enters its order.

Conversely, Employee asserts that the trial court did not err because he was not eligible for social security retirement benefits and was not drawing those benefits on his date of injury or on the date Employee was found to have reached maximum medical improvement.  Further, Employee argues that *McCoy* was statutorily overruled by the passage of the 2013 Workers' Compensation Reform Act because the legislature did not include language addressing the social security offset in Tennessee Code Annotated section 50-6-207(3), the section that deals with permanent *partial* disability.  Employee contends that the legislature was aware that *McCoy* had expanded the entitlement to an offset in cases of permanent partial disability and intentionally chose not to change or move the language to adopt it statutorily with respect to permanent partial disability benefits.  Therefore, Employee argues *McCoy* is no longer good law.  Finally, Employee asserts Employer should not be entitled to disturb the trial court's judgment because parties will be incentivized to engage in gamesmanship with respect to the timing of claims.

We first note that it is undisputed that Employee was not eligible for social security retirement benefits at the time of his injury, at the time he reached maximum medical improvement, or at the time of his compensation hearing.  The compensation hearing was held on March 2, 2023, and the trial court's order was issued on March 14, 2023.  The record indicates that Employee was born on November 22, 1956, and,

apparently, became eligible for Social Security old age benefits on March 22, 2023.[2] After the trial court entered its compensation order, Employer did not file a Rule 59 Motion to Alter or Amend the Judgment once Employee became eligible for social security benefits.[3] As noted previously, the parties did not file a transcript of the hearing, so we are unable to determine whether and to what extent the social security offset was discussed at trial or whether Employer elicited any testimony or presented other evidence regarding the extent of the offset. Nevertheless, it is clear the trial court was not afforded an opportunity to address this issue prior to this appeal. Accordingly, we discern no error by the trial court because this issue was not ripe for adjudication at the time of the compensation hearing.

Despite Employer not filing a motion to alter or amend after Employee became eligible for social security old age benefits, Tennessee Code Annotated section 50-6-229(c) provides another mechanism for the modification of any award payable periodically:

> (c)  All amounts paid by the employer and received by the employee or the employee's dependents, by lump sum payments, shall be final, but the amount of any award payable periodically for more than twenty-six (26) weeks may be modified as follows:
>
> (1)  At any time by agreement of the parties and approval by the court; or
>
> (2)  If the parties do not agree, then at any time after twenty-six (26) weeks from the date of the award, either party may file an application to the court of workers' compensation claims, on the ground of increase or decrease of incapacity due solely to the injury.

Thus, there are statutory mechanisms for modification of disability awards to be paid periodically for more than twenty-six weeks. Employer can seek modification of the award pursuant to Tennessee Code Annotation section 50-6-229(c)(1).[4]

---

[2] For persons born in 1956, the "normal retirement age" is at 66 years and 4 months. *See* https://www.ssa.gov/oact/progdata/nra.html (last visited July 26, 2023).

[3] As noted previously, following the trial court's order, *Employee* filed a Rule 59 Motion to Alter or Amend the Judgment or in the Alternative Rule 60.04 Motion to Clarify Clerical Mistake.

[4] Employer could also seek modification of the award at any time after twenty-six (26) weeks from the date of the award pursuant to Tennessee Code Annotation section 50-6-229(c)(2) if there is a factual basis for such a motion.

7

Moreover, Employer can seek relief from the trial court's judgment or order via Rule 60.02 of the Tennessee Rules of Civil Procedure, which provides that, "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding" for certain reasons, including "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02. The motion must be made within a "reasonable time" and "not more than one year after the judgment, order[,] or proceeding was entered or taken." Rule 60.02 also "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order[,] or proceeding."

Thus, we conclude that, as of the date the trial court's compensation order was filed, the issue of a potential social security offset was not ripe for adjudication, and the issue is not ripe for appeal. *See, e.g.*, *Foriest v. United Parcel Service, Inc.*, No. 2017-06-0413, 2018 TN Wrk. Comp. App. Bd. LEXIS 39, at *6-8 (Tenn. Workers' Comp. App. Bd. Aug. 10, 2018) ("The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all."). This, however, does not prevent Employer from seeking relief pursuant to any applicable statute or rule.

With respect to Employee's argument regarding the continued viability of the Supreme Court's holding in *McCoy*, we disagree that it has been statutorily overruled. The relevant statute at issue in *McCoy,* Tennessee Code Annotated section 50-6-207(4)(A)(i), was unaltered by the 2013 reforms. That same language, which remains in the Law presently, has been interpreted by the Tennessee Supreme Court to apply both to permanent total and permanent partial disability benefits. One principle of statutory construction states that a legislature is deemed to be aware of judicial interpretations of statutes and, absent specific action to alter or amend the statute in question, is presumed to have acquiesced in that judicial interpretation. *See, e.g.*, *Coffee Cty Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 847 (Tenn. 2019). Employee has cited no legislative action since the adoption of the Reform Act that limited, modified, or otherwise abrogated this language. Accordingly, we conclude Employee's argument is without merit.

*Medical Expenses and Attorneys' Fees*

Employee argues on appeal that the trial court erred in finding Employer was not responsible for reimbursing BCBS the full amount of medical expenses it paid for Employee's work-related treatment. Employee also contends the court erred in not ordering Employer to pay an attorneys' fee equal to twenty percent of the full amount of medical expenses paid by BCBS as a result of his attorney's efforts to protect BCBS's subrogation interest. In support of its position, Employee relies on *Reatherford v. Lincoln Brass Works*, No. 01S01-9707-CV-00145, 1998 Tenn. LEXIS 33 (Tenn.

8

Workers' Comp. Panel Jan. 26, 1998). In *Reatherford*, which is an unpublished opinion, the employee's recovery as awarded by the trial court included "all medical expenses," which totaled $11,438 for treatment provided by the Department of Veterans Affairs ("VA"). In a prior appeal, the Supreme Court had affirmed the trial court's judgment.[5] Thereafter, the employee filed a motion in the trial court seeking "judicial coercion" for the employer to pay the benefits that were awarded, including interest on the judgment. 1998 Tenn. LEXIS 33, at *2. The employer responded by stating that the interest had been paid and that, with respect to the medical expenses, the VA agreed to accept $7,625 to fully resolve its subrogation lien. *Id.* The trial court ruled that the VA had a subrogation interest in the total amount of $11,438 for the medical treatment it provided, but that the "VA has compromised its subrogation interest to $7,625.00[,] which has been paid in full." *Id.* at *2-3. The court awarded the employee's attorney a fee based on the full subrogation lien for representing the VA "with such payment to be made by the [employer]." *Id.* at *3.

The employer appealed again, questioning the award of attorneys' fees. The Supreme Court's Special Workers' Compensation Appeals Panel affirmed the trial court's order, noting that the initial judgment directed the employer to pay "'all medical expenses,' as contrasted to specific amounts to named providers." *Id.* at *4. The Panel affirmed the trial court's order requiring the employer pay attorneys' fees based on that attorney's representation of the VA's subrogation interest, stating "[w]e know of no authority, and none has been cited to us, for the proposition that under the circumstances of this case the [employer] should be allowed to defeat the attorney[s'] fee in the manner fashioned." *Id.* at *5.

There are several critical differences between the circumstances of *Reatherford* and the present case. First, it is important to note that the Panel issued its opinion in *Reatherford* prior to Tennessee's adoption of a medical fee schedule for workers' compensation cases. Second, the General Assembly enacted a statute that requires employers to pay medical expenses for work-related injuries pursuant to the terms of that fee schedule. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(iii) ("[t]he liability of the employer for the services provided to the employee shall be limited to the maximum allowable fees" under the fee schedule); *see also* Tenn. Comp. R. & Regs. 0800-02-18-.01 *et seq.* In fact, employers are prohibited from paying any medical bill for a covered injury outside the fee schedule. Tenn. Comp. R. & Regs. 0800-02-18-.15(1). Those requirements did not exist when *Reatherford* was decided.

Third, unlike in *Reatherford*, the court here did not order Employer to pay "all" medical expenses but rather, relying on *Bowlin v. Servall, LLC*, No. 2017-07-0224, 2020 TN Work. Comp. App. Bd. LEXIS 70, at *16 (Tenn. Workers' Comp. App. Bd. Nov. 25,

---

[5] *Reatherford v. Lincoln Brass Works*, No. 01S01-9504-CV-00058, 1996 Tenn. LEXIS 313 (Tenn. Workers' Comp. Panel May 17, 1996).

2020), ordered Employer to "pay the medical bills for treatment of [Employee's] neck injury *pursuant to the fee schedule*." (Emphasis added.)[6] Fourth, there is no proof in the record that BCBS retained counsel to protect its subrogation interest or that Employee's counsel had an attorney-client relationship with BCBS. Accordingly, we discern no error with the trial court's order requiring Employer to pay medical expenses to Employee's medical providers in amounts allowable under the applicable fee schedule.[7]

Finally, as we have previously observed, the Tennessee Supreme Court has held that contested medical expenses are part of the "recovery or award" upon which attorneys' fees may be based. *See Langford v. Liberty Mutual Ins. Co.*, 854 S.W.2d 100, 102 (Tenn. 1993). Here, the trial court noted that Tennessee allows an award of attorneys' fees for the recovery of disputed medical expenses and that, pursuant to Tennessee Code Annotated section 50-6-226(a)(1), this fee is to be paid by the party employing the attorney from "the amount of the recovery." Employee has cited no statutory authority or binding precedent supporting the proposition that a trial court can compel Employer to pay twenty percent of the amount of unpaid medical expenses to Employee's attorney as a fee separate and apart from its payment of medical bills to the providers in accordance with the applicable fee schedule. Thus, we affirm the trial court's order regarding the award of attorneys' fees.

## Conclusion

For the foregoing reasons, we affirm and certify as final the trial court's March 14, 2023 order in all respects. Each party shall pay its own costs on appeal.

---

[6] Our opinion in *Bowlin* was affirmed and adopted by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Bowlin v. Servall, LLC*, No. W2020-01708-SC-R3-WC, 2021 Tenn. LEXIS 532 (Tenn. Workers' Comp. Panel Aug. 13, 2021), which was, in turn, accepted and approved by the Tennessee Supreme Court. *Bowlin v. Servall, LLC*, No. W2020-01708-SC-R3-WC, 2021 Tenn. LEXIS 533 (Tenn. Aug. 13, 2021).

[7] Thus, Employer is obligated by the terms of the trial court's order to pay the providers pursuant to the fee schedule, and BCBS's claim for reimbursement would then be against the providers, not Employer.

10



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Robert Bragg | ) | Docket No. 2020-07-0020 |
| | ) | |
| v. | ) | State File No. 10723-2018 |
| | ) | |
| Premium Services, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 1st day of August, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Neil M. McIntire | | | | X | nmcintire@howell-fisher.com |
| Jeffrey P. Boyd | | | | X | jboyd@borenandboyd.com scallison@borenandboyd.com dmyles@borenandboyd.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov